## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DENNIS NELSON,** | : | |
| | : | **Civil Action Number:** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | <u>**Jury Trial Demanded**</u> |
| | : | |
| **FULTON COUNTY SHERIFF'S** | : | |
| **OFFICE,** | : | |
| | : | |
| **Defendant.** | | |

## <u>COMPLAINT</u>

Dennis Nelson ("Mr. Nelson"), by and through the undersigned counsel, brings this Complaint against Defendant Fulton County Sheriff's Office and shows as follows:

## INTRODUCTION

### 1.

Mr. Nelson brings this action under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* (the ADA), and the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"), alleging unlawful employment practices and termination on the basis of Mr. Nelson's disability.

1

2.

Mr. Nelson seeks to recover (1) damages for lost pay, accrued and unused vacation, retirement benefits and healthcare benefits, (2) interest on his damages calculated at the prevailing rate, (3) compensatory and punitive damages, and (4) costs of litigation, including his reasonable attorneys' fees.  Mr. Nelson also seeks declaratory and equitable relief, including front pay in lieu of reinstatement.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and 28 U. S.C. § 1331. This claim arises under federal laws.

4.

Venue is proper in this district and division pursuant to 28 U.S.C. §1391 and all the events giving rise to the claims herein arose in this judicial district.

## PARTIES

5.

Mr. Nelson is an adult citizen of the United States and a resident of the State of Georgia, Cherokee County.

6.

Mr. Nelson is currently 56 years old, and was 52 years old at the time Fulton County terminated his employment.

7.

Mr. Nelson is a person with a disability within the meaning of the ADA, 42 U.S.C. §12102(1)(A), (B) and a qualified individual with a disability as defined in the Rehabilitation Act. Specifically, Mr. Nelson suffered from a mental or physical impairment that substantially limited one or more major life activities, had a record of such impairment, and was regarded by Fulton County, his employer, as having such impairment.

8.

At all times material to his claims herein Mr. Nelson was qualified to perform the essential functions of the positions that he held, with reasonable accommodations.

9.

Defendant is the Fulton County Sheriff's department, organized under the Constitution of and laws of the State of Georgia.

10.

Defendant receives Federal financial payments and/or grants assistance.

11.

Defendant is responsible for operating the Fulton County Jail.

12.

Defendant is a "covered entity" under the ADA and the Rehabilitation Act, and an employer within the meaning of the ADA.

13.

Defendant has the capacity to sue and be sued.

**INTRODUCTION**

14.

Since 2006, the Fulton County Jail has operated under a federal court consent decree stemming from a lawsuit filed on behalf of inmates claiming they were deprived of constitutional rights because of the dirty, dangerous and overcrowded conditions.

15.

Under the consent decree, Judge Marvin Shoob has appointed a Federal Monitor to oversee Defendant's operations of the Fulton County Jail, and the Court retained jurisdiction over its enforcement.

16.

Fulton County Sheriff Jackson recruited Mr. Nelson to resign his position as

Deputy Chief of the Headquarters Bureau of the Forsyth County Sheriff's Department to become Chief Jailer for the Fulton County Sheriff's Department.

17.

As inducements to leave the Forsyth Sheriff's Department and to work for the Fulton County Sheriff's Department, Sheriff Jackson promised Mr. Nelson that he could work on a regular day shift with weekends off, that he could schedule his own hours, and he promised Mr. Nelson that he would report directly to Sheriff Jackson.

18.

In substantial part because of the above inducements, Mr. Nelson resigned from the Forsyth County Sheriff's Department and started working for Defendant as its Chief Jailer on February 8, 2010.

19.

Defendant employed Mr. Nelson from February 8, 2010 until October 21, 2010.

20.

At all times relevant to the claims herein, Mr. Nelson held the rank of Colonel and the title of Chief Jailer.

21.

At all times material to the claims herein, Mr. Nelson has suffered from a disability as defined in the ADA and the Rehabilitation Act substantially impairing his ability to obtain sufficient sleep, a major life activity within the meaning of the ADA and the Rehabilitation Act.

22.

Mr. Nelson's disability causes him to experience excessive fatigue and drowsiness during the day and significantly contributes to high blood pressure and exposure to strokes unless he maintains a regular sleep pattern.

23.

At all times material to the claims herein, Mr. Nelson has been under treatment of a physician for his disability and its effects upon his major life activities.

24.

At all times material to the claims herein Mr. Nelson's physician directed him to maintain a consistent night-time sleeping schedule to avoid disruption of his sleep cycle and further serious medical complications.

25.

At all times material to the claims herein, until Defendant took the actions complained of herein below, Mr. Nelson was able to manage the effects of his disability avoiding adverse medical consequences while successfully performing the essential functions of his position in a manner that met all of Defendant's lawfully-established performance and behavior requirements.

26.

In May 2010, Sheriff Jackson appointed Jimmy Carter ("Carter") as Chief Deputy Sheriff.

27.

In May 2010, Defendant informed Mr. Nelson that, notwithstanding Sheriff Jackson's previous assurances made to induce him to come to work for Fulton County by promising that Mr. Nelson would directly report to Sheriff Jackson, Defendant required Mr. Nelson to report to Chief Deputy Carter for direct supervision rather than to Sheriff Jackson.

28.

Carter reviewed Mr. Nelson's performance on June 10, 2010, and on each of the performance criteria rated Mr. Nelson's performance at levels described as

"acceptable" or "outstanding" and made no derogatory comments on the appraisal.

29.

The appraisal further stated: "Chief Nelson has not shown any disrespect for the attendance policies. He has not abused any leave privileges".

30.

On July 19, 2010, Carter told Mr. Nelson that he no longer would permit him to take any time off without Carter's prior approval, and that he could not take any more time off during the year.

31.

Carter withdrew approval previously given for Mr. Nelson to use his accrued paid time off to participate as an assessor on behalf of the Commission on Accreditation of Law Enforcement Agencies (CALEA) of a Florida Sheriff's Department.

32.

On July 19, 2010, Carter directed Mr. Nelson to begin working overnight and evening shifts each month.

33.

Mr. Nelson advised Carter that his disability required him to maintain regular sleep patterns and rendered it difficult to work a schedule requiring him to work a full evening or night shifts while also performing his administrative duties such as meeting with the Federal Jail Monitor, which he only could perform during daytime. Carter directed Mr. Nelson to both attend those daytime meetings and to work the evening and night shifts.

34.

On September 20, 2010, Mr. Nelson again advised Fulton County that he suffered from a disability that required him to maintain a regular sleep pattern, that his disability would be exacerbated if he worked a schedule that required him to work back-to-back day, evening and night shifts.

35.

On September 20, 2010, Mr. Nelson requested that Defendant make a reasonable accommodation for his disability by not requiring him to work back-to-back shifts and to permit him to make periodic visits on every shift, but not the full shift.

36.

On September 20, 2010, despite Mr. Nelson's request for a reasonable accommodation to his disability, Defendant directed Mr. Nelson to work more night and evening shifts, even though Mr. Nelson already had been working between 9 and 12 hours on many days.

37.

Beginning on September 20, 2010, and continuing until Defendant terminated Mr. Nelson on October 20, 2010, Defendant engaged in a continuing course of actions with the common purpose of causing Mr. Nelson's termination whether by forcing his resignation or by creating false documentation to justify his involuntary termination.

38.

These actions included, but were not limited to, issuing critical disciplinary memos to Mr. Nelson for false reasons and imposing working conditions that undermined Mr. Nelson's authority to manage the Jail.

39.

These actions also included altering Mr. Nelson's work schedule by requiring that he work back-to-back irregular and rotating shifts in a manner that

Defendant knew would exacerbate his disability and that could create medical complications for Mr. Nelson.

40.

These actions further included withdrawing prior approval for previously scheduled leaves and vacations, and prohibiting Mr. Nelson from taking leave for the rest of the year.

41.

On September 21, 2014, Mr. Nelson provided to Defendant a Doctor's certification of Nelson's disability to in support his request for a reasonable accommodation to his disability, wherein he informed Defendant that working a rotating shift would exacerbate his disability and could cause serious medical complications.

42.

Despite Mr. Nelson's request for a reasonable accommodation and his providing Defendant with his Doctor's Certification of his disability and need for the reasonable accommodation, Defendant failed and refused to engage him in an interactive dialogue to find reasonable accommodations but ordered Mr. Nelson to work the rotating shifts that Carter had scheduled.

43.

During Sheriff Jackson's term as Sheriff, no other Chief Jailer prior to Mr. Nelson ever was required to work a similarly irregular rotating back-to-back shift schedule that Carter directed Mr. Nelson to work after learning Mr. Nelson's disability and receiving Mr. Nelson's request for a reasonable accommodation.

44.

During Sheriff Jackson's term as Sheriff, no other Defendant employee prior to Mr. Nelson ever was required to work a similarly irregular rotating back-to-back shift schedule that Carter directed Mr. Nelson to work.

45.

On September 27, 2010, Mr. Nelson made a disability discrimination complaint to the Fulton County Office of Equal Employment Opportunity and Disability Affairs ("EEO office") reiterating his request that Defendant make a reasonable accommodation to his disability.

46.

On October 13, 2010, the EEO office notified Mr. Nelson and Defendant that Mr. Nelson was considered as a person with a disability who was eligible for reasonable accommodations and scheduled a mediation meeting with Mr. Nelson

and Defendant for October 20, 2010 to resolve Mr. Nelson's complaint and reasonable accommodation request.

47.

On October 20, 2010, Mr. Nelson met with Defendant and the representative of the EEO office to discuss his ADA complaint and reasonable accommodation request.

48.

Carter informed the attendees including Mr. Nelson and the EEO office representatives that he had rescinded the rotating shift requirement on October 19, and had returned Mr. Nelson to a daytime work schedule. Mr. Nelson indicated that he was satisfied with this accommodation.

49.

Immediately following the above-referenced meeting, on October 21, 2010, one month after he notified Defendant and requested a reasonable accommodation to his disability, Defendant terminated Mr. Nelson's employment without providing him any reason justifying his termination.

50.

Defendant replaced Mr. Nelson with a non-disabled individual who did not

meet the minimum job qualifications specified in Defendant's job description for the position of Chief Jailer that was published  at the time the decision was made.

51.

The reasons Defendant subsequently proffered for terminating Mr. Nelson are pretextual.

52.

On April 4, 2011, Mr. Nelson filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 410-2011-02909) alleging that Defendant had discriminated against him because of his race and disability, and that it retaliated against him for exercising his right to participate in a procedure established to eliminate unlawful discrimination in Fulton County. Mr. Nelson's complaint was referred to the United States Department of Justice for determination.

53.

On June 11, 2014, the U.S. Department of Justice issued a Notice of Right to Sue with respect to his Charge of Discrimination.

54.

Mr. Nelson has exhausted his administrative remedies as required by the ADA.

55.

This action is filed within 90 days of Mr. Nelson's receipt of the U.S. Department of Justice's Notice of Right to Sue referenced above.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, AND THE REHABILITION ACT, AS AMENDED

56.

Mr. Nelson incorporates the allegations of all previous paragraphs above by reference herein as if each was set out verbatim in this paragraph.

57.

At all times material to the claims herein, Mr. Nelson was an employee within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq* ("ADA").

58.

At all times material to the claims herein, Mr. Nelson was qualified to perform the essential functions of his position as Defendant's Chief Jailer with reasonable accommodation.

59.

At all times material to the claims herein, Mr. Nelson was an individual with a disability within the meaning of the Rehabilitation Act 29 U.S.C. § 705, as amended ("Rehabilitation Act").

60.

At all times material to the claims herein, Mr. Nelson has suffered from a disability within the meaning of the ADA, as amended, 42 U.S.C. S 12102, *et seq.*

61.

At all times material to the claims herein, Mr. Nelson has had a record of a disability as defined in 42 U.S.C. §12102(1)(B).

62.

At all times material to the claims herein, Mr. Nelson has been regarded as having a disability as set forth in 42 U.S.C.§12012(1)(C).

63.

At all times material to the claims herein, Defendant was an employer as defined in the Americans with Disabilities Act, as amended. 42 U.S.C. §12111(5).

64.

At all times material the claims herein, Defendant was an employer subject to the Rehabilitation Act, 29 U.S.C. § 701, et seq.

65.

At all times material to the claims herein, Defendant has been a department or agency of a state or local government that received federal financial assistance within the meaning of 29 U.S.C. §794(b).

66.

By its actions set forth above, Defendant failed and refused to make a reasonable accommodation to Mr. Nelson's disability.

67.

By its actions set forth above, Defendant discriminated against Mr. Nelson because of his disability in violation of the Americans with Disabilities Act, as amended 42 U.S.C. §12112(a) and (b).

68.

By its actions set forth above, Defendant discriminated against Mr. Nelson because of his disability in violation of the Rehabilitation Act, 29 U.S.C. §794(a).

69.

As a consequence of Defendant's actions as set forth above, Mr. Nelson has suffered the loss of pay and benefits, the loss of the enjoyment of working, and has been required to incur attorney's fees and expenses of litigation for which Defendant should be found liable.

70.

Mr. Nelson is entitled to declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory damages, costs, attorney's fees, and any and all such other relief that may be appropriate in the enlightened conscience of the jury.

**COUNT II**

**RETALIATION**

71.

The allegations in all previous paragraphs above are incorporated by reference as if fully set out in this paragraph.

72.

Mr. Nelson engaged in actions protected under the Americans with Disabilities Act by requesting reasonable accommodation to his disability and by making a complaint to the EEO office about Defendant's unlawful discrimination and by attending a mediation meeting with the EEO office to discuss the resolution of his disability discrimination complaint.

73.

Mr. Nelson engaged in actions protected under the Rehabilitation Act by requesting reasonable accommodation to his disability and by making a complaint to the EEO office about Defendant's unlawful discrimination, and by attending a mediation meeting with the EEO office to discuss the resolution of his disability discrimination complaint.

74.

In retaliation for Mr. Nelson's protected activity set forth hereinabove, Defendant subjected Mr. Nelson to discrimination and harassment by requiring him to work a rotating shift schedule immediately after and because he informed Defendant of his disability and requested a reasonable accommodation to his disability.

75.

In retaliation for Mr. Nelson's protected activity set forth hereinabove, Defendant subjected Mr. Nelson to discrimination and harassment by issuing memoranda which falsely accused Mr. Nelson of performance and behavior deficiencies, as described above.

76.

In retaliation for Mr. Nelson's protected activity set forth above, Defendant terminated his employment on October 21, 2010.

77.

Defendant's retaliation because Mr. Nelson engaged in activity protected by the Rehabilitation Act, as amended, and by the Americans with Disabilities Act, as amended Defendant violated the Rehabilitation Act and the Americans with Disabilities Act, 42 U.S.C.§12203(a)

78.

As a direct and proximate result of Defendant's illegal conduct, Mr. Nelson has suffered the loss of pay and benefits, the loss of the enjoyment of working, and has been required to incur attorney's fees and expenses of litigation for which Defendant should be found liable.

79.

Mr. Nelson is entitled to recover compensatory damages, back pay equal to the value of his lost compensation and employment benefits and front pay until such time as he obtains a position equivalent to that of Chief Jailer of the Fulton County Sheriff's Department, plus interest thereon, plus his costs and attorneys fees.

WHEREFORE, Mr. Nelson respectfully prays:

1. That his claims be tried before a jury;

2. That he be awarded compensatory damages, lost compensation, and the value of all fringe benefits including vacation, insurance, retirement benefits and interest on said damages calculated at the prevailing rate;

3. That the Court enjoin Defendant from engaging in acts of discrimination and retaliation for engaging in activities protected under the Americans with Disabilities Act and the Rehabilitation Act;

4. That the Court award Mr. Nelson his costs of litigation, including his reasonable attorney's fees and costs from Defendant; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS & FITZPATRICK, LLC**

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
(404) 979-3150
(404) 979-3170 (facsimile)
michaelcaldwell@dcbflegal.com

*s/ Michael A. Caldwell*
Michael A. Caldwell
Georgia Bar No. 102775
*s/ Earnest H. DeLong*
Earnest H, DeLong
Georgia Bar No. 217300

COUNSEL FOR MR. NELSON