IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DENNIS NELSON,

              Plaintiff,

      v.

TED JACKSON (in his Official
capacity as Sheriff of Fulton County)
and FULTON COUNTY, GEORGIA,

          Defendants.

CIVIL ACTION FILE NO.

1:14-CV-02851-ELR-JFK

## **NON-FINAL REPORT AND RECOMMENDATION**

In the above-styled employment discrimination action, Plaintiff Dennis Nelson asserts claims for disability discrimination and retaliation against Defendants Fulton County and Ted Jackson in his official capacity as Sheriff of Fulton County. [Doc. 6]. Plaintiff's claims are brought pursuant to the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments of 2008 ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* [Id.]. Pending before the court is a motion [Doc. 9] to dismiss Plaintiff's amended complaint [Doc. 6] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Fulton County. Also pending is Plaintiff's motion [Doc. 16] to amend the complaint,

which is opposed by Defendant Fulton County [Doc. 23].  Attached to Plaintiff's motion to amend is a proposed second amended complaint.  [Doc. 16-1].  Finally, Defendant Sheriff Jackson has filed a Rule 12(b)(1) motion to dismiss Plaintiff's ADA claims based on a lack of subject matter jurisdiction.  [Doc. 25].

## I.    Background Facts

Plaintiff Dennis Nelson's amended complaint asserts claims against Defendants Jackson and Fulton County for violations of the ADA and the Rehabilitation Act. [Doc. 6].  Pertinent to the issues before the court, Plaintiff alleges in the complaint the following.  Defendant Jackson is the Sheriff of Fulton County and is being sued in his official capacity.  [Id. ¶ 10].  Defendant Fulton County is a political subdivision of the State of Georgia.  [Id. ¶ 9].  Plaintiff Nelson began his employment with the Fulton County Sheriff's Department in the position of Chief Jailer on February 8, 2010.  [Id. ¶¶ 21-24].  Sheriff Jackson recruited and hired Plaintiff and exercised authority over him at all times relevant to this action.  [Id. ¶¶ 11-14, 21-23].  According to Plaintiff, Defendants Jackson and Fulton County were his employer.  [Id. ¶¶ 69, 70].

Plaintiff alleges that he suffers from a disability which substantially impairs his ability to obtain sufficient sleep.  [Doc. 6 ¶¶ 26-28].  Plaintiff's physician has "directed him to maintain a consistent night-time sleeping schedule to avoid disruption

2

of his sleep cycle and further serious medical complications." [Id. ¶ 29]. On July 19, 2010, Chief Deputy Jimmy Carter told Plaintiff that he could not take any more time off during the year and that he was required to begin working overnight and evening shifts each month. [Id. ¶¶ 36, 37]. Plaintiff informed Carter that working such a schedule would exacerbate his sleep disability, and he requested that Defendants make a reasonable accommodation for his disability by not requiring him to work back to back shifts. [Id. ¶¶ 38-41]. On September 20, 2010, Carter ordered Plaintiff to work more rotating night and evening shifts which were disruptive to his sleep schedule. Carter also began issuing critical disciplinary memos to Plaintiff and countermanded Plaintiff's orders. [Id. ¶¶ 42-44].

Plaintiff Nelson alleges that on September 27, 2010, he made a disability discrimination complaint to the Fulton County Office of Equal Employment Opportunity and Disability Affairs ("EEO Office"). [Id. ¶ 51]. At the same time, he reiterated his request for a reasonable accommodation. [Id.]. On October 20, 2010, Plaintiff met with Defendants and a representative of the Fulton County EEO Office. Chief Deputy Carter stated during the meeting that he had rescinded the rotating shift requirement on October 19 and that he was returning Plaintiff to a daytime work schedule. [Id. ¶ 54]. Plaintiff indicated that he was satisfied with the accommodation.

3

[Id.].   The next day, October 21, 2010, Defendants terminated Plaintiff without providing him with any reason justifying his termination.  [Id. ¶ 55].

Plaintiff Nelson filed his original complaint in this court on September 4, 2014, naming Fulton County Sheriff's Office as Defendant. [Doc. 1].  After Defendant filed a motion [Doc. 5] to dismiss on October 9, 2014, which was subsequently denied as moot [Doc. 10], Plaintiff filed his first amended complaint [Doc. 6] on October 24, 2014, naming as Defendants Fulton County and Ted Jackson in his official capacity as Sheriff of Fulton County.  In Count I of his amended complaint, Plaintiff Nelson alleges that Defendants violated the ADA and the Rehabilitation Act by refusing to make a reasonable accommodation to his disability and by subjecting him to disparate treatment on the basis of his disability.  [Id. ¶¶ 62-76].  In Count II, Plaintiff alleges that Defendants engaged in retaliation in violation of the ADA and the Rehabilitation Act by issuing memos falsely accusing him of performance and behavior deficiencies and by terminating his employment.  [Id. ¶¶ 77-85].

## II.   Defendant Fulton County's Motion to Dismiss

### A.   Standard of Law

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  Hardy v.

4

Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (as amended 2007). And Rule 10(b) provides in pertinent part that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count. . . ." Fed. R. Civ. P. 10(b) (as amended 2007). In Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955 (11th Cir. 2008), the Eleventh Circuit Court of Appeals stated:

> These rules work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

AO 72A

(Rev.8/82)

Id. at 980 n.57 (internal quotation marks and citations omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted) (emphasis omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting

6

Twombly, 127 S. Ct. at 1966-67).  A plaintiff's complaint will be dismissed if it does not contain "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted).  And, a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984)).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." Bernard v. Calejo, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing Marshall County Board of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will

support the cause of action.")); see also Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (same); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

### B.   Discussion

Plaintiff Nelson has asserted claims against Defendant Fulton County for disability discrimination brought pursuant to the ADA, as amended by the ADAAA, and the Rehabilitation Act.   [Doc. 6].   The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in any of the "terms, conditions, [or] privileges of employment."   42 U.S.C. § 12112(a); and see Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1526 (11th Cir. 1997). Similarly, "Section 504 of the Rehabilitation Act provides that '[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"   T.W. ex rel. Wilson v. School Board of Seminole County, Florida, 610 F.3d 588, 603 (11th Cir. 2010) (quoting 29 U.S.C. § 794(a)).

Plaintiff has also asserted claims against Fulton County based on the ADA and the Rehabilitation Act for retaliation.   [Doc. 6].   Under the ADA's anti-retaliation

8

provision, an employer is prohibited from "discriminat[ing] against an individual because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a); accord Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260-61 (11th Cir. 2001). "The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the [ADA] . . . ." Burgos–Stefanelli v. Secretary, U.S. Dep't of Homeland Sec., 410 Fed. Appx. 243, 245 (11th Cir. 2011). The Eleventh Circuit Court of Appeals "'rel[ies] on cases construing [the Rehabilitation Act and the Americans with Disabilities Act] interchangeably' because 'the same standards govern discrimination claims' under both statutes." Wilson, 610 F.3d at 604 (citation omitted); and see Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) (same); Holbrook, 112 F.3d at 1526 n.2 ("The Rehabilitation Act . . . provides, in pertinent part, that '[t]he standards used to determine whether this section has been violated in a complaint alleging [nonaffirmative action] employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act . . . .'") (citation omitted). Therefore, the court will discuss whether Plaintiff has stated a cause of action against Defendant Fulton County under the ADA and the Rehabilitation Act together. See Cash, 231 F.3d at 1305.

9

Defendant contends that Fulton County should be dismissed as a matter of law because the County was not Plaintiff's employer under either the ADA or the Rehabilitation Act.  [Doc. 9 at 5-9].  The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person."  42 U.S.C. § 12111(5)(A).  The ADA's definition mirrors the definition of employer under Title VII of the Civil Rights Act, see 42 U.S.C. § 2000e(b); accordingly, "[t]he ADA adopts in large part the Title VII case precedent[,]" and "courts have used the Title VII cases as a guide for determining employer liability under the ADA."  Huck v. Mega Nursing Servs., Inc., 989 F. Supp. 1462, 1463 (S.D. Fla. 1997).  "This same technique can be used when looking at other similar statutes such as the Rehabilitation Act . . . ."  Id.  The issue of whether a person is an employer under the ADA and the Rehabilitation Act, as is true of Title VII, is primarily determined by examining "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim."  Lyes v. City of Riviera Beach, Florida, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc).  Although "a plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law[,] . . . state law is relevant insofar as it describes the plaintiff's position,

10

including his duties and the way he is hired, supervised and fired." Calderon v. Martin County, 639 F.2d 271, 272-73 (5th Cir. 1981).[1]

The Eleventh Circuit has held that "when assessing whether multiple governmental entities are a single 'employer' under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII." Lyes, 166 F.3d at 1345. However, separate "entities will be treated as a single 'employer' under Title VII where one entity exerts or shares control over the fundamental aspects of the employment relationships of another entity, to such a substantial extent that it clearly outweighs the presumption that the entities are distinct." Id. Aspects of employment which courts should consider include "the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party." Id. (citations and internal quotation marks omitted).

In Georgia, the sheriff's office is a separate, constitutionally created entity that is independent from the county. Ga. Const. art. IX, § 2, ¶ 1(c)(1). The "Georgia

---

[1]Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Constitution designed the sheriff's office to enjoy a great deal of independence from the county that it serves." Pellitteri v. Prine, 776 F.3d 777, 780 (11th Cir. 2015) (citation omitted). The sheriff is not a county employee, and the county is precluded from controlling or affecting the sheriff's office or its personnel. See Ga. Const. art. IX, § 2, ¶ 1(c)(1); Pellitteri, 776 F.3d at 780; Grech v. Clayton County, Georgia, 335 F.3d 1326, 1333 (11th Cir. 2003) (en banc); Board of Comm'rs of Randolph County v. Wilson, 260 Ga. 482, 396 S.E.2d 903 (1990). The county plays no role in creating the sheriff's powers and duties or in making personnel or policy decisions. With respect to the hiring and firing of deputies, "the authority of sheriffs to employ personnel is . . . derived from the State . . . independent of any influence from county governments." Pellitteri, 776 F.3d at 780 (citing O.C.G.A. § 15–16–23); and see Grech, 335 F.3d at 1333. The duties of the sheriff are set by statute, and the county commission has no authority to divest him of those duties. O.C.G.A. § 15-16-10; Chaffin v. Calhoun, 262 Ga. 202, 203, 415 S.E.2d 906, 907 (1992). Furthermore, the sheriff and not the county is responsible for and has authority over his deputies. O.C.G.A. § 15-16-23; Grech, 335 F.3d at 1336; Brown v. Jackson, 221 Ga. App. 200, 201, 470 S.E.2d 786, 787 (1996). Thus, under Georgia law, the county "does not, and cannot, direct the Sheriff . . . how to hire, train, supervise, or discipline his deputies,

what policies to adopt, or how to operate his office . . . ." Grech, 335 F.3d at 1347;

and see Duffey v. Bryant, 950 F. Supp. 1168, 1174 (M.D. Ga. 1997) ("It is well-settled

law in Georgia that a county and its commissioners are without authority over the

sheriff or his deputies.").

Despite the "separate and distinct nature" of the sheriff and the county, Manders

v. Lee, 338 F.3d 1304, 1311 (11th Cir. 2003), Plaintiff argues that Fulton County was

his joint employer, along with Sheriff Jackson. [Doc. 14 at 12, 14]. In the amended

complaint that is presently before the court, Plaintiff includes no allegations regarding

Fulton County's control over his employment. [Doc. 6]. However, in his response

brief and in his proposed second amended complaint, Plaintiff makes the following

assertions which allegedly establish that Fulton County exercised sufficient control

over the terms and conditions of his employment to be considered his employer. [Doc.

14 at 3-7; Doc. 16-1]. The Fulton County Personnel Department published and

revised the job specifications and requirements for Plaintiff's Chief Jailer position and

assigned the position to a Job Class Specification. [Doc. 16-1 ¶¶ 11, 12]. The Job

Class Specification requires applicants for the Chief Jailer position to meet physical

standards and criteria set by the Fulton County Personnel Board. [Doc. 14 at 3; Doc.

16-1 ¶¶ 11, 12]. Plaintiff was required to file his employment application in the

Fulton County Personnel Department, and the County required him to submit to its regular employment process.  [Doc. 16-1 ¶ 14].  Plaintiff had to meet Fulton County hiring standards by obtaining a full physical examination at the Fulton County Board of Health.  [Doc. 14 at 3-4].  Plaintiff was also given a Fulton County Employee Handbook and attended the County's New Employee Orientation program.  [Doc. 16-1 ¶ 15].  In addition, Plaintiff was covered by the County's compensation and benefits programs, and his pay records and W-2 forms indicated that his pay came from the Fulton County Board of Commissioners.  [Doc. 14 at 4-5; Doc. 16-1 ¶ 17].  The Fulton County Personnel Department maintains employment records, administers wages and salaries, recommends appropriate classes and salary ranges for new and reclassified positions, and maintains a pay schedule and compensation plan for all departments in the County including the Sheriff's Department.  [Doc. 14 at 5-6; Doc. 16-1 ¶ 20].  Sheriff's Department employees are covered by the Fulton County merit system, and they can appeal promotion, discipline, and termination decisions through the County Grievance Appeal process.  [Doc. 14 at 4-5; Doc. 16-1 ¶ 18].  When Plaintiff complained about Sheriff Jackson's refusal to make a reasonable accommodation to his disability, the Fulton County EEO Office received and processed his complaint.  [Doc. 14 at 3-7; Doc. 16-1 ¶¶ 21, 69-71].  Plaintiff contends that these allegations

14

establish that Fulton County had sufficient control over his employment to be considered his employer.  [Doc. 14 at 7-16].  Other courts, however, have considered similar factual assertions and found to the contrary.

In Redding v. Tuggle, 2006 WL 2166726 (N.D. Ga. July 31, 2006), the district court considered and specifically rejected the plaintiff's contention that, because sheriff's office employees had been placed under the county civil service system, he was a county employee.  Id., at **7-8.  The court held that "such a placement does not vest the county with such control over the employment decisions of the sheriff's office as to incur municipal liability" and "the mere fact that 'the employees are covered by the Civil Service Act, which prescribes general employment policies, does not demonstrate that Clayton County exercises active control over the day-to-day labor practices.'"  Id., at *7 (citation omitted); accord Cassells v. Hill, 2010 WL 4616573, at *10 (N.D. Ga. November 8, 2010) (same).[2]  "Indeed, civil service rules do not

---

[2]The court in Cassells also rejected the argument that because Clayton County chose to ensure the Sheriff, the County admitted liability for the Sheriff's actions. 2010 WL 4616573, at *10 ("Clayton County's purchase of liability insurance . . . does not establish that it is responsible for Hill's conduct").

15

authorize Clayton County to hire, fire, or discipline employees." <u>Redding</u>, 2006 WL 2166726, at *7.[3]

Similarly, in the present case, the facts alleged by Plaintiff Nelson show that Fulton County did not exercise control over the daily employment practices in the Sheriff's Department.  The County also did not have the authority to terminate Sheriff's Department employees.  All of the conduct alleged by Plaintiff in support of his ADA and Rehabilitation Act claims was undertaken by Defendant Sheriff Jackson and his supervisory personnel within the Sheriff's Department, in particular Chief Deputy Jimmy Carter.  [Doc. 6 ¶¶ 36-44, 54, 55].  Defendant Fulton County took no part in any of the allegedly adverse actions, including the decision to terminate Plaintiff's employment.  [<u>Id.</u>].  In fact, Plaintiff's amended complaint alleges that the Fulton County EEO Office found that Plaintiff "was considered as a person with a disability and was eligible for reasonable accommodations."  [Doc. 6 ¶ 52].  The Fulton County EEO Office even scheduled a mediation meeting with Plaintiff and Chief Deputy Carter to resolve Plaintiff's ADA charge, and a representative of the

---

[3]Although this discussion concerned Clayton County's liability for violation of 42 U.S.C. § 1983, the district court concluded that the same factors resulted in a finding that Clayton County "does not exercise control over employment decisions of the sheriff and CCSO" requiring dismissal of the Title VII employment discrimination claims.  <u>Id.</u>, at *9.

EEO Office attended the meeting to discuss the accommodation request.  [Id. ¶¶ 52, 53].  Plaintiff's amended complaint does not allege that Fulton County took any adverse actions against him; instead, the amended complaint alleges that the Fulton County EEO Office tried to intervene and assist him with his request for reasonable accommodations after he had complained about treatment in the Sheriff's Department. Despite Fulton County's alleged efforts to assist Plaintiff, Defendant Jackson and his supervisory personnel allegedly made the decision to deny Plaintiff's accommodation request and terminate his employment with the Sheriff's Department.  [Id. ¶¶ 51-55].

Although Plaintiff's pay came from the Fulton County Board of Commissioners and he was covered by the County's compensation and benefit programs, these facts do not support his argument that the County exercised sufficient control over the terms and conditions of his employment to be considered his employer.  An elected constitutional officer in Georgia such as a sheriff or a district attorney is not an employee of any county, but his or her "budget and accounts are subject to the authority" of the county which "has the power to cut the budget of an elected constitutional county officer. . . ."  Board of Comm'rs of Dougherty County v. Saba, 278 Ga. 176, 177, 598 S.E.2d 437, 439 (2004).  "Once a county commission[, however,] adopts a budget for an elected constitutional county officer, the decision

how to spend the funds allocated to that office falls 'solely to [the constitutional officer] in the exercise of [his/]her duties' and the county commission 'may not dictate to the [elected constitutional county officer] how the budget will be spent. . . .'" Id.; see also Lawson v. Lincoln County, 292 Ga. App. 527, 529, 664 S.E.2d 900, 902 (2008) ("'although the county commission has the power and the duty to issue a budget, the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties'") (citation omitted).  In an analogous case involving an employee of a district attorney's office, the court rejected arguments similar to those made by Plaintiff Nelson in the present case.[4]

---

[4]District attorneys in Georgia are constitutional officers who hold elected office and represent the State in its prosecutions.  See Ga. Const. art. VI, § 8, ¶ 1; O.C.G.A. §§ 15-18-6, 6.1, 7.  District attorneys are empowered by Georgia statutory law to hire and discharge personnel and to "define the duties and fix the title of any attorney or other employee of the district attorney's office."  O.C.G.A. § 15-18-20(a); see also O.C.G.A. § 15-18-14 (providing that district attorneys are authorized to appoint various assistant district attorneys and other attorneys); O.C.G.A. § 15-18-15 (providing that the "district attorney may designate in writing an assistant district attorney as the chief assistant district attorney"); O.C.G.A. § 15-18-21(b) (holding that any attorney employed by the district attorney "shall have such authority, powers, and duties as may be assigned by the district attorney").  Personnel employed by district attorneys "shall serve at the pleasure of the district attorney. . . ."  O.C.G.A. § 15-18-20(b).  "The Georgia Constitution limits a county's authority over personnel decisions made by an elected official, Ga. Const. art. IX, § 2, ¶ 1(c)(1), which includes district attorneys, see id. art. VI, § 8, ¶ 1(a)."  Robbins v. Chatham County, 863 F. Supp. 2d 1367, 1373-74 (S.D. Ga. 2012).

18

In Robbins, a female employee who worked for the Chatham County District Attorney asserted claims of discrimination against Chatham County based on Title VII and the Age Discrimination in Employment Act ("ADEA"). 863 F. Supp. 2d at 1370-72. The plaintiff in Robbins argued that, although she worked in the District Attorney's Office, the County was her employer for purposes of federal employment discrimination law. The plaintiff noted *inter alia* that: her paycheck was from Chatham County; her tax form listed Chatham County as her employer; she participated in Chatham County insurance and retirement plans; her separation report was from Chatham County and signed by the County's Human Resources Director; the Georgia Department of Labor listed Chatham County as her employer; and the prior District Attorney considered her an employee of Chatham County. Id. at 1375. The court, however, found that these facts were "of little consequence with respect to [the plaintiff's] ADEA and Title VII claims against Defendant Chatham County. . . . The facts Plaintiff has cited are related to particular administrative aspects of her employment, but are of no moment when assessing whether Defendant Chatham County possessed a level of control over [the District Attorney's] personnel decisions that would render it liable under either the ADEA or Title VII." Id. The plaintiff in Robbins also argued that the County "controls personnel decisions because it approves

19

employee requests from the District Attorney's office, funds the position, and then determines whether to assign an employee to that office." Id. at 1375 n.4.  The Robbins court was not persuaded by this line of argument and stressed that "it is the District Attorney himself that makes the determination on whom to employ or not employ. . . ."  Id.  Because the Georgia Constitution dispossesses counties of any authority or control regarding employment decisions made by district attorneys, the court in Robbins held that Chatham County was not an employer of the plaintiff and dismissed the ADEA and Title VII claims against the County.  Id. at 1374-75.  The same reasoning applies to the employment decisions of elected sheriffs with respect to the counties in which they serve.

The court finds that Plaintiff Nelson has not overcome the presumption that "governmental subdivisions denominated as separate and distinct under state law should not be aggregated" for purposes of federal employment discrimination law. Lyes, 166 F.3d at 1345.  Plaintiff has asserted that at all times relevant to his claims, he was employed as the Chief Jailer in the Fulton County Sheriff's Department.[5] [Doc. 6 ¶¶ 11-14, 21-24].  The Eleventh Circuit has consistently held that in Georgia,

---

[5]Plaintiff also alleges that Sheriff Jackson recruited, hired, and exercised authority over him.  [Doc. 6 ¶¶ 11-14, 21-23].

AO 72A

(Rev.8/82)

"Deputies, including those serving as jailers, are employees of the sheriff and not the county."  Manders, 338 F.3d at 1311 (citing, *inter alia*, Warren v. Walton, 231 Ga. 495, 499, 202 S.E.2d 405, 409 (1973) ("[T]his court has recognized that deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge.") (citation and internal quotation marks omitted)); accord Pellitteri, 776 F.3d at 780 ("Deputies are . . . considered employees of the sheriff and not the County."); Jordan v. Conway, 441 Fed. Appx. 761, 764 (11th Cir. 2011) (upholding dismissal of Gwinnett County from lawsuit alleging age and religious discrimination claims brought by deputy sheriff because "[u]nder Georgia law, deputies are employed by Sheriff's Departments, not counties").  As a matter of law, the court finds that Defendant Fulton County was not Plaintiff's employer for the purpose of ADA and/or Rehabilitation Act liability during his employment with the Sheriff's Department.  The ADA and Rehabilitation Act claims in the amended complaint against Fulton County should be dismissed.[6]

---

[6]Having found that dismissal is warranted on this basis, the court will not address the County's alternative ground for dismissal.  [Doc. 9 at 9-12].

21

### III.    Plaintiff's Motion to Amend the Complaint

Plaintiff Nelson has filed a motion to amend the complaint.  [Doc. 16].  Rule 15(a) provides, in pertinent part, "A party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  (2) . . .  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(1), (2) (as amended 2009). Plaintiff has already amended his complaint once, and Defendant has not consented to a second amendment.  [Doc. 6; Doc. 16; Doc. 23].  Therefore, the court's leave is necessary for Plaintiff to file a second amended complaint.

The Eleventh Circuit "has held that, consistent with Rule 15(a)'s mandate that 'leave shall be freely given when justice so requires,' district courts should generously allow amendments even when the plaintiff does not have the right to amend the complaint."  Williams v. Board of Regents of Univ. Sys. of Georgia, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (quoting Rosen v. TRW, Inc., 979 F.2d 191, 194 (11th Cir. 1992)).  "Unless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial."  Florida Evergreen Foliage

22

v. E.I. DuPont De Nemours and Co., 470 F.3d 1036, 1041 (11th Cir. 2006) (quoting

Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989) (internal

quotation marks and alteration omitted)).  Nevertheless, "Leave may be denied

because of 'undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility

of amendment.'"  Andrx Pharm., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1236 (11th

Cir. 2005) (quoting Foman v. Davis, 83 S. Ct. 227, 230 (1962)).

Plaintiff correctly notes that undue delay is not an issue in the present case.

[Doc. 16 at 2-4].  Plaintiff filed his original complaint on September 4, 2014, and he

filed an amended complaint on October 24, 2014.  [Doc. 1; Doc. 6].  Only six months

have passed since Plaintiff's lawsuit commenced, and discovery is still open.  The

relevant caselaw indicates that a much longer period of time is necessary before a

delay is considered excessive enough to deny leave to amend.  See, e.g., Reese v.

Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008) (affirming denial of leave to amend

because the motion "accompanied [the plaintiff's] response to the defendants' motions

for summary judgment and was filed nearly seven weeks after the close of

discovery"); Burger King Corp. v. Weaver, 169 F.3d 1310, 1319 (11th Cir. 1999)

23

(affirming denial of leave to amend because the defendant waited to amend a counterclaim until the eve of trial and more than three years after the counterclaim had been filed).

Defendant Fulton County, however, argues that Plaintiff's motion to amend should be denied due to futility.  The undersigned agrees.  In Hall v. United Ins. Co. of America, 367 F.3d 1255 (11th Cir. 2004), the Eleventh Circuit summarized the law applicable to the issue before the court:

> Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," . . . leave to amend "should be freely given[.]" . . .  Under Foman, however, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. . . .  "This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."

Id. at 1262-63 (citations omitted); see also St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 822 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail.").  The court is therefore essentially determining whether the amended complaint would survive a motion to dismiss.  See Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co., 336 F. Supp. 2d 1239, 1257 (S.D. Fla. 2004) (a denial of a motion to amend for

24

futility is based on a decision that "the proposed claims are futile because they would not survive a motion to dismiss").

Plaintiff asserts that granting him leave "to file the proposed Second Amended Complaint will permit Plaintiff to set forth more particularly a factual basis for Plaintiff's claims that Fulton County was his joint employer."[7]   [Doc. 16 at 3]. However, as discussed *supra*, the court has already considered the proposed second amended complaint and found that it does not contain "factual content [that] allows the court to draw the reasonable inference that [Fulton County] is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citation omitted).  There is no legal basis for finding that Fulton County is Plaintiff's employer for purposes of ADA or Rehabilitation Act liability.  The claims against Fulton County would still be subject to dismissal even if Plaintiff were permitted to file his proposed second amended complaint.  Therefore, Plaintiff's motion [Doc. 16] to amend the complaint should be denied on the basis of futility.

---

[7]Plaintiff also states in his proposed second amended complaint that the purpose of the amendment is to add Sheriff Jackson as a Defendant.  [Doc. 16-1 at 1].  This is not correct.  Sheriff Jackson was added as a Defendant when Plaintiff filed his first amended complaint on October 24, 2014.  [Doc. 6].

25

## IV.    Sheriff Jackson's Motion to Dismiss

Pursuant to Rule 12(b)(1), Defendant Sheriff Jackson has filed a motion to dismiss Plaintiff's ADA discrimination and retaliation claims based on a lack of subject matter jurisdiction. [Doc. 25]. Defendant Jackson argues that Plaintiff's ADA claims against him in his official capacity as Sheriff of Fulton County should be dismissed due to the shield of immunity provided by the Eleventh Amendment to the United States Constitution. [Id. at 7-11]. The Eleventh Amendment bars suits against a state in federal court brought by its own citizens or by citizens of another state.[8] See Kimel v. Florida Board of Regents, 120 S. Ct. 631 (2000); Hans v. Louisiana, 10 S. Ct. 504 (1890); DeKalb County School Dist. v. Schrenko, 109 F.3d 680, 687 (11th Cir. 1997). A state, however, may be subject to federal jurisdiction in instances where the state has waived its Eleventh Amendment immunity and where Congress has made it "'unmistakably clear'" that it intends to "'abrogate the States' constitutionally secured immunity from suit in federal court . . . .'" Kimel, 120 S. Ct. at 640 (quoting Dellmuth

---

[8]The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [Supreme Court] cases have extended the Amendment's applicability to suits by citizens against their own States." Board of Trustees of Univ. of Alabama v. Garrett, 121 S. Ct. 955, 962 (2001).

26

v. Muth, 109 S. Ct. 2397, 2400 (1989)).   "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, . . . federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment."   McClendon v. Georgia Dep't of Cmty. Health, 261 F.3d 1252, 1256 (11th Cir. 2001) (citations omitted).   However, "[u]nlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction."   Id. at 1257 (citing Wisconsin Dep't of Corrections v. Schacht, 118 S. Ct. 2047, 2052  (1998); Calderon v. Ashmus, 118 S. Ct. 1694, 1697 n.2 (1998)).   "Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so.  The State can waive the defense."   Schacht, 118 S. Ct. at 2052.

"It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court . . . when an 'arm of the State' is sued."   Manders, 338 F.3d at 1308 (citing Mt. Healthy City Sch. Dist. Board of Educ. v. Doyle, 97 S. Ct. 568, 572 (1977)).   "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."   Id. (citing Shands Teaching Hosp. and Clinics

27

v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its function or role in a particular context.")).  A court is to consider four factors, set forth in Manders, when evaluating "whether an entity is an 'arm of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309.  In Pellitteri, after weighing the four factors, the Eleventh Circuit wrote, "On balance, we conclude that Sheriff Prine enjoys Eleventh Amendment immunity against Ms. Pellitteri's wrongful termination claims brought against him in his official capacity under . . . the ADA."[9] 776 F.3d at 783.

In the present case, Plaintiff Nelson alleges that Defendant Sheriff Jackson is liable under the ADA for employment decisions made by the Sheriff and his supervisory personnel within the Sheriff's Department.  The actions which form the

---

[9]In reaching this decision, the Eleventh Circuit reversed the decision of the district court in Pellitteri v. Prine, 2013 WL 4495847 (M.D. Ga. August 21, 2013), to the extent that the lower court had followed the unpublished opinion in Keene v. Prine, 477 Fed. Appx. 575 (11th Cir. 2012), to hold that the Sheriff did not have Eleventh Amendment immunity against being sued for violations of the ADA.  See Pellitteri, 776 F.3d at 783.

28

basis of Plaintiff's ADA claims include work shift assignments, disciplinary memos, and Plaintiff's termination.  [Doc. 6 ¶¶ 36, 37, 42-44, 55].  As discussed *supra*, Sheriffs in Georgia derive their duties and power from the State, are independent from the counties that they serve, and derive their authority to make employment decisions from the State.  See Pellitteri, 776 F.3d at 780; Manders, 338 F.3d at 1311.  Furthermore, "the sheriff's obligation to administer the jail [is] directly derived from the State and not delegated through the county entity."  Manders, 338 F.3d at 1319.  The employment decisions made by supervisory personnel regarding the shifts and termination of Plaintiff in his position as Chief Jailer fall into this category.  For these reasons, the first Manders factor–how state law defines the entity–weighs in favor of finding that Sheriff Jackson in his official capacity is an "arm of the State."

With regard to the second factor, the degree of control the State maintains over the entity, the Pellitteri court noted that the State of Georgia exercises a great deal of control over a sheriff's personnel decisions through the governor's power to discipline a sheriff for misconduct, through the State's certification process for peace officers, and through the Peace Officer Standards and Training Council's power to discipline peace officers, including deputies, for misconduct.  776 F.3d at 781.  Moreover, sheriffs do not exercise their authority to appoint and supervise deputies for

29

themselves; "[r]ather, sheriffs select deputies to assist them in executing their own duties, which have been delegated to them by the State." Id. at 782.  Although Plaintiff argues that Fulton County exercises significant control over Sheriff Jackson's employment decisions, as previously discussed, the County's involvement is only related to certain administrative functions.  [Doc. 28 at 3-7].  The County possesses no control over the daily employment practices in the Sheriff's Department. Plaintiff's amended complaint confirms this when it alleges that despite efforts made by the Fulton County EEO Office to assist him with his request for reasonable accommodations, Sheriff Jackson and his supervisory personnel made the decision to deny Plaintiff's accommodation request and terminate his employment.  [Doc. 6 ¶¶ 51-55].  The undersigned agrees with the Manders court's finding that in light of "the State's direct and substantial control over the sheriff's duties, training, and discipline and the county's total lack thereof, this control factor . . . weighs heavily in favor of [the sheriff's] entitlement to Eleventh Amendment immunity."  338 F.3d at 1322.

As for the third factor, where the entity derives its funds, each county bears the burden of funding the sheriff's office.  The State of Georgia, however, does provide funding to each sheriff's office, and the State is the entity that mandates that each county set a budget for the sheriff's office.  See Pellitteri, 776 F.3d at 782; Manders,

30

338 F.3d at 1323-24.  "More important, although each county sets the total budget for the sheriff's office, it cannot dictate *how* the sheriff spends those funds."  Pellitteri, 776 F.3d at 782 (emphasis in original).  The funding of Sheriff Jackson's budget by Fulton County, which is required by the State, does not establish that the County exercises any control over the employment decisions made by the Sheriff and his supervisory personnel.  See Manders, 338 F.3d at 1324.  The Manders court held that the "state involvement is sufficient to tilt the third factor of the Eleventh Amendment analysis toward immunity."[10]  Id.

The fourth and final factor is "who is responsible for judgments against the entity."  Manders, 338 F.3d at 1309.  The responsibility for an adverse judgment against Sheriff Jackson will not rest with either the State or Fulton County.  Instead, any judgment will be paid out of the budget for the Sheriff's Office, which consists of funds from both the State and the County.  Id. at 1327.  The Pellitteri court found

_____

[10]Although the court in Pellitteri wrote, "[W]e cannot conclude that this factor weighs in favor of Eleventh Amendment immunity," it seems clear that this was a misstatement.  776 F.3d at 782.  The court cited Ross v. Jefferson County Dep't of Health, 701 F.3d 655 (11th Cir. 2012), which held that "the source of funding for the Health Department does not tip the balance against immunity because state law requires the county to supply those funds."  Id. at 660 (citation and internal quotation marks omitted).  Moreover, the Pellitteri court later specifically stated that "the first three factors here [including where the entity derives its funds] weigh in favor of immunity . . . ."  776 F.3d at 783.

31

that "to the extent that the state treasury will be spared here from paying any adverse judgment, this factor weighs in favor of denying immunity."  776 F.3d at 783.

As in Pellitteri and Manders, the first three factors weigh in favor of immunity, while the fourth factor weighs against immunity.  See Pellitteri, 776 F.3d at 783; Manders, 338 F.3d at 1328-29.  The undersigned concludes that on balance, Sheriff Jackson in his official capacity was acting as an "arm of the State" when exercising his power in the Sheriff's Office to make employment decisions regarding Plaintiff in his position as Chief Jailer.  See Pellitteri, 776 F.3d at 783.  The court must next determine whether the ADA sections upon which Plaintiff bases his claims contain a valid abrogation of the State's Eleventh Amendment immunity.

Plaintiff's ADA claims against Sheriff Jackson are for disability discrimination and retaliation.[11]  Plaintiff's disability discrimination claim is brought pursuant to Title

---

[11]Plaintiff has also asserted disability discrimination and retaliation claims against Defendant Jackson based on the Rehabilitation Act, 29 U.S.C. § 794.  [Doc. 6].  Jackson has not moved to dismiss Plaintiff's Rehabilitation Act claims.  [Doc. 25]. This is understandable given the Eleventh Circuit's holding that states that accept federal funding waive Eleventh Amendment immunity for Rehabilitation Act claims brought pursuant to Section 504, 29 U.S.C. § 794.  See Garrett v. University of Alabama at Birmingham Board of Trustees, 344 F.3d 1288, 1290–93 (11th Cir. 2003) (per curiam) (citing 42 U.S.C. § 2000d–7, which provides: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794]. . . .").

32

I of the ADA, 42 U.S.C. § 12112. Congress has not validly abrogated the states'

immunity for claims for monetary damages brought pursuant to Title I of the ADA.

See Garrett, 121 S. Ct. at 967-68; Rizo v. Alabama Dep't of Human Resources, 228

Fed. Appx. 832, 835 (11th Cir. 2007) ("Although Congress may abrogate the states'

immunity in certain situations, it has not done so with regard to suits for monetary

damages by private individuals pursuant to Title I of the ADA, which is the statute

Rizo claims the State violated."). Consequently, Sheriff Jackson is entitled to

Eleventh Amendment immunity against Plaintiff's claim for disability discrimination

brought pursuant to Title I of the ADA, 42 U.S.C. § 12112. [Doc. 6 ¶ 73].

Under Ex parte Young, 28 S. Ct. 441 (1908), the Eleventh Amendment does not

bar suits for prospective injunctive and declaratory relief, including those suits based

on Title I of the ADA. See Garrett, 121 S. Ct. at 968 n.9; Miller v. King, 384 F.3d

1248, 1263-64 (11th Cir. 2004), opinion vacated and superseded by, 449 F.3d 1149

(11th Cir. 2006). Although the parties have not addressed this issue, the court notes

that Plaintiff's amended complaint states that he is seeking injunctive and declaratory

relief. [Doc. 6 ¶¶ 2, 76]. Plaintiff specifically asks the court to "permanently enjoin

Defendants from refusing to make reasonable accommodations to employees'

disabilities, and from engaging in further acts of disability discrimination or retaliation

for engaging in activities protected under the [ADA] . . . ." [Doc. 6 at 23]. The court, however, finds that Plaintiff lacks standing to request injunctive relief.

"In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." Shotz v. Case, 256 F.3d 1077, 1081 (11th Cir. 2001). Plaintiff Nelson is no longer employed by the Fulton County Sheriff's Department, and he does not allege facts showing a likelihood that he will suffer future employment discrimination by Defendant Sheriff Jackson. [Doc. 6]. Plaintiff was terminated from his position as Chief Jailer on October 21, 2010, and he has not been rehired by the Fulton County Sheriff's Department. [Doc. 6 ¶ 23, 55]. There is caselaw indicating that a former employee "may have standing to sue for injunctive relief against an employer, but those non-employees were in the process of seeking reinstatement to their former positions, or seeking work from that employer." Walsh v. Nevada Dep't of Human Resources, 471 F.3d 1033, 1037 (9th Cir. 2006) (citations omitted). In the present case, Plaintiff's complaint does not include a request for reinstatement or indicate that he is seeking to regain employment with the Fulton County Sheriff's Department. [Doc. 6]. In fact, Plaintiff specifically states in the amended complaint that he is seeking "front pay in lieu of reinstatement." [Doc. 6 ¶

34

2].  There is no allegation giving rise to an inference that Plaintiff will suffer future disability-based employment discrimination by Defendant Jackson.  Accordingly, the undersigned concludes that Plaintiff does not have standing to seek prospective injunctive or declaratory relief.

Plaintiff's claim for retaliation against Sheriff Jackson is based on Title V of the ADA, 42 U.S.C. § 12203(a).  [Doc. 6 ¶ 83].  Title V prohibits retaliation against someone because that person has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  "Title V does not contain its own remedy or procedure of redress for a violation but only makes available the remedies and procedures found in the other titles."  Marx v. Georgia Dep't of Corrections, 2013 WL 5347395, at *4 (M.D. Ga. September 23, 2013) (citing 42 U.S.C. § 12203(c); Collazo–Rosado v. University of Puerto Rico, 775 F. Supp. 2d 376, 384 (D. P.R. 2011)).  Plaintiff alleges that Sheriff Jackson violated the ADA's Title V by retaliating against him when he complained of disability discrimination, a violation of Title I.  [Doc. 6 ¶¶ 78-84].  Defendant Jackson has moved to dismiss this claim, but the parties have not discussed the specifics of immunity with respect to ADA retaliation claims.

The Eleventh Circuit has not addressed whether states are entitled to Eleventh Amendment immunity on retaliation claims brought pursuant to Title V of the ADA. However, the undersigned agrees with those courts which have found that immunity does extend to ADA Title V retaliation claims, at least to the extent those claims are based on Title I disability discrimination claims. See, e.g., Demshki v. Monteith, 255 F.3d 986, 988 (9th Cir. 2001) ("We recognize that Garrett arose in the context of Title I, but we nevertheless conclude that the Court's holding necessarily applies to claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I."); Quadir v. New York State Dep't of Labor, 39 F. Supp. 3d 528, 536-37 (S.D. N.Y. 2014); Morales v. New York, 22 F. Supp. 3d 256, 268-69 (S.D. N.Y. 2014) ("District courts within the Second Circuit have consistently held that the Eleventh Amendment bars retaliation claims under Title V of the Americans with Disabilities Act."); Marx, 2013 WL 5347395, at *3-4; Davis v. Vermont, Dep't of Corrections, 868 F. Supp. 2d 313, 322 (D. Vt. 2012); Collazo-Rosada, 775 F. Supp. 2d at 387; Shabazz v. Texas Youth Comm'n, 300 F. Supp. 2d 467, 472–73 (N.D. Tex. 2003). Because Sheriff Jackson is immune from Plaintiff's underlying claim for disability discrimination based on Title I of the ADA, the undersigned finds that the Sheriff is also entitled to Eleventh Amendment immunity

36

against Plaintiff's Title V retaliation claim based on violations of Title I.  See Davis, 868 F. Supp. 2d at 322 ("Because Defendant is immune from Plaintiff's underlying ADA claim of employment discrimination under Title I, it should likewise be immune to his Title V retaliation claim that is grounded in acts that are unlawful under Title I.").  "[A]llowing Plaintiff to proceed in a Title V suit for money damages founded on an alleged violation of Title I would allow [him] to bypass the immunity Defendant[] would otherwise receive under the Eleventh Amendment." Marx, 2013 WL 5347395, at *4.  Accordingly, Sheriff Jackson's motion [Doc. 25] to dismiss Plaintiff's ADA claims should be granted.

## V.     Conclusion

Based on the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that:

Defendant Fulton County's motion [Doc. 9] to dismiss be **GRANTED** and that Plaintiff Nelson's claims against the County be **DISMISSED WITH PREJUDICE**;

Plaintiff's motion [Doc. 16] for leave to file a second amended complaint be **DENIED**; and

Defendant Sheriff Jackson's motion [Doc. 25] to dismiss be **GRANTED** and that Plaintiff's ADA claims against the Sheriff be **DISMISSED WITH PREJUDICE**.

37

If the district court adopts this report and recommendation, the only claims remaining in this case will be Plaintiff's claims against Defendant Jackson in his official capacity as Fulton County Sheriff for disability discrimination and retaliation brought pursuant to the Rehabilitation Act.  [Doc. 6].

**SO RECOMMENDED** this 31st day of March, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)