IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| DENNIS NELSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:14-CV-02851-ELR |
| | * | |
| TED JACKSON, in his Official | * | |
| capacity as Sheriff of Fulton County, | * | |
| | * | |
| Defendant. | * | |

# O R D E R

In this matter, Magistrate Judge Janet F. King's Final Report and Recommendation ("R&R") (Doc. No. 85) is before the Court for consideration. Judge King recommends the Court deny Defendant Sheriff Jackson's Motion for Summary Judgment on Plaintiff Dennis Nelson's Rehabilitation Act claims for failure to accommodate and retaliation, and deny Plaintiff's Motion for Partial Summary Judgment on his failure to accommodate claim. Both Parties filed timely objections to the R&R (Doc. Nos. 87 & 88), and Defendant responded to Plaintiff's objections (Doc. No. 89). The Court sets forth its rulings and conclusions below.

## I. STANDARD OF REVIEW

The district court reviewing an R&R "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2012). If neither party objects, the district judge need only review the R&R for clear error and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Notably, a party objecting to an R&R "must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted).

## II. BACKGROUND

The Parties do not object to the Magistrate Judge's recitation of the facts, and the Court therefore adopts the facts as set forth in the R&R. Nevertheless, the Court will briefly describe the circumstances surrounding this case for ease of reference.

Since approximately 2007, Dr. Suzanne Ferree Turner has treated Plaintiff for chronic sleep apnea. Following a sleep study, Dr. Turner recommended Plaintiff begin using a Continuous Positive Airway Pressure ("CPAP") machine, a device that helps keep the user's airway open during sleep. Dr. Turner also

recommended Plaintiff keep a regular sleep schedule, and Plaintiff testified that frequent interruptions to his sleep schedule significantly hindered both his ability to sleep and his general health.

Defendant hired Plaintiff as the Chief Jailer at the Fulton County Jail in early 2010. Regarding the required work hours, Defendant informed Plaintiff that he "expect[ed] an honest day's work," and that Plaintiff would work the hours necessary to fulfill the Chief Jailer's obligations. (Pl.'s Statement of Material Facts ("PSMF") ¶ 12, Doc. No. 66-6.) When Plaintiff submitted his formal application for employment, he expressly acknowledged his understanding that the position might require shift work or some type of departure from standard daytime operating hours.

Plaintiff began working in February 2010, and at that time the jail had more than 2,500 inmates and 600 employees, and operated twenty-four hours day, seven days a week. Jail employees worked three primary shifts: 1) 7:00 a.m to 3:00 p.m (day shift); 2) 3:00 p.m. to 11:00 p.m. (evening shift); and 3) 11:00 p.m. to 7:00 a.m. (morning shift). Defendant testified that he expected Plaintiff to regularly rotate working each of these shifts to become familiar with all of the jail's employees and programs.

On June 10, 2010, Chief Deputy James Carter, Plaintiff's immediate superior, issued a performance appraisal for Plaintiff for the period ending on June

30, 2010. Carter indicated that Plaintiff's performance was "outstanding" and that Plaintiff's punctuality and attendance were "satisfactory." (PSMF ¶ 22–23.) Less than three weeks later, Carter issued an addendum to Plaintiff's performance review, downgrading Plaintiff's appraisal from "outstanding" to "acceptable." (Id. at ¶ 25.) Carter cannot remember why he changed Plaintiff's appraisal.

Over the next few months, a series of events occurred that ultimately culminated in Plaintiff's termination. These events, which form the foundation of this suit, can be summarized as follows:

- On July 19, 2010, Carter issued Plaintiff a detailed directive outlining his duties as Chief Jailer and indicating Plaintiff was expected to work at least two evening shifts and two morning shifts every month. Plaintiff contends he immediately began complying with this directive.

- On August 24, 2010, Defendant and Carter met with Plaintiff to discuss his job performance and explained that he was not fulfilling his obligations as Chief Jailer, specifically his obligation to walk through the jail during the various shifts to get acquainted with the jail's employees.

- On September 20, 2010, Plaintiff gave Carter a letter from Dr. Turner explaining that Plaintiff's sleep disorder required him to maintain a constant sleep schedule and requesting that Carter strongly consider permitting Plaintiff to work only daytime shifts.

- On September 21, 2010, Carter gave Plaintiff a four-week work schedule indicating that Plaintiff was to work at least four evening shifts and four morning shifts.

- On September 27, 2010, Plaintiff submitted an application for reasonable accommodation to the Fulton County Office of Equal

Employment Opportunity and Disability Affairs ("Fulton EEOC") stating that his sleep disorder required him to consistently work daytime hours while sleeping at night.

- On October 13, 2010, the Fulton EEOC sent Defendant a letter certifying that Plaintiff was a person with a disability within the meaning of the American's with Disabilities Act ("ADA") who was entitled to the protections afforded by that statute.

- On October 19, 2010, Carter changed Plaintiff's work schedule so that he was restored by to the day shift. The next day, the Fulton EEOC met with Carter and Plaintiff, and Plaintiff indicated that he was satisfied with the accommodation.

- On October 21, 2010, Defendant and Carter met with Plaintiff to discuss his deficient work performance. Jackson testified that he attempted to dialogue with Plaintiff but that Plaintiff "just sat there and looked at [him] like what are you going to do." (Dep. of Sheriff Jackson 198:14–16, Doc. No. 55.) At that time, Jackson made the decision to fire Plaintiff.

- On October 22, 2010, Defendant and Carter met with Plaintiff and informed him that his services were no longer needed.

Plaintiff subsequently brought this action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, alleging claims of discrimination (failure to accommodate) and retaliation. As discussed above, Magistrate Judge King recommends the Court deny Defendant's Motion for Summary Judgment with respect to both of Plaintiff's claims, and deny Plaintiff's Motion for Partial Summary Judgment on his failure to accommodate claim. The Parties only object to the portion of the R&R addressing Plaintiff's claim for failure to accommodate.

## III.  ANALYSIS

Both Parties seek summary judgment on Plaintiff's Rehabilitation Act claim for failure to accommodate. "Both the [ADA] and the Rehabilitation Act prohibit employers from discriminating against disabled persons," and "[d]iscrimination claims brought under these acts are governed by the same standards." Branscomb v. Sec'y of Navy, 461 F. App'x 901, 903 (11th Cir. 2012) (per curiam). Under either statute, "a plaintiff makes a *prima facie* case of disability discrimination by showing that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability." Id.

Here, the Magistrate Judge denied Plaintiff partial summary judgment on his failure to accommodate claim on the grounds that a reasonable jury could find that he was not a "qualified individual." Plaintiff does not dispute this finding but instead argues the Magistrate Judge erred by not holding that, as a matter of law, he is disabled within the meaning of the Rehabilitation Act.[1] Similarly, the Magistrate Judge recommends denying Defendant's summary judgment motion on Plaintiff's failure to accommodate claim because a reasonable jury could also find that Plaintiff *was* a "qualified individual" and that Defendant discriminated against Plaintiff by failing to provide a reasonable accommodation. Defendant, in a brief largely resembling his brief supporting his summary judgment motion, challenges

---

[1]   Plaintiff acknowledges that a ruling in his favor would only resolve a single element of his failure to accommodate claim.

the Magistrate Judge's recommendations. The Court will address the Parties' objections as they relate to each of the three prongs of a *prima facie* case of disability discrimination.

**A. Whether Plaintiff is "Disabled"**

Within the context of the Rehabilitation Act, an individual is "disabled" if he or she "suffers from a physical or mental impairment that substantially limits one or more of the major life activities." Id. (citing 42 U.S.C. § 12102(2)(A) and 29 U.S.C. § 705(9)(B)). "Major life activities are 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Id. at 903–04 (quoting 29 C.F.R. § 1630.2(i)). An impairment can be said to "substantially limit" a major life activity "if it renders the individual unable to perform 'a major life activity that the average person in the general population can perform' or significantly restricts the 'condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.'" Id. at 904 (quoting Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000)).

Plaintiff contends the Magistrate Judge erred by not finding he is disabled as a matter of law based on the following evidence: 1) the testimony of Dr. Turner that Plaintiff suffers from sleep apnea such that he should use a CPAP machine and

7

maintain a regular sleep schedule; 2) Plaintiff's own testimony that interruptions to his sleep schedule have significant, adverse effects on his ability to sleep; and 3) documents showing the Fulton EEOC determined that Plaintiff is disabled within the meaning of the ADA.

The Magistrate Judge noted that Defendant conceded, strictly for purposes of the R&R, that Plaintiff's sleep apnea constituted a disability within the meaning of the Rehabilitation Act. Defendant contends, however, that Plaintiff will not be able to prove he has a disability at trial. In short, the Court is not persuaded by Plaintiff's argument that he is disabled as a matter of law, largely because he has not cited the Court to *any* evidence in the record comparing his inability to sleep with that of others in the general population. See Hubmann v. Young, No. 4:09-cv-390-SPM/WCS, 2010 WL 3789102, at *4 (N.D. Fla. Sept. 22, 2010) (holding the plaintiff failed to establish that sleep apnea substantially limited his ability to sleep, in part, "because his assertions of an inability to sleep . . . afford[ed] no means of comparison of [his] inability to sleep relative to the inability to sleep of the average person in the general population").

Plaintiff correctly notes that this Circuit has held sleeping qualifies as a major life activity. Nadler v. Harvey, No. 06-12692, 2007 WL 2404705, at *5 (11th Cir. Aug. 24, 2007) ("We . . . formally hold that sleep constitutes a major life activity."). However, the Nader Court also remarked that

> difficulty sleeping is extremely widespread, and a plaintiff must present evidence, beyond vague assertions of a rough night's sleep or a need for medication, that his affliction is worse than that suffered by [a] large portion of the nation's adult population. Someone who sleeps moderately below average is not disabled under the Act. Our sister circuits have also applied these guidelines to insomnia and have found plaintiffs sleeping as little as two and a half hours at a time and as little as four and half hours a night not to be substantially impaired.

Id. at *6 (internal quotations, alterations, and citations omitted). Here, Plaintiff's evidence does not establish as a matter of law that his inability to sleep is worse than that suffered by the population at large. Accordingly, Plaintiff's sole objection to the R&R is **OVERRULED**.

## B. Whether Plaintiff is a "Qualified Individual"

Under the second prong of a failure to accommodate claim, the Court must consider if Plaintiff is a "qualified individual." Branscomb, 461 F. App'x at 903. "[A] 'qualified individual' is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position at issue." Id. at 904 (citing 42 U.S.C. § 12111(8)). Put another way, Plaintiff "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodations." Id. (quoting Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000)) (internal quotations omitted). "Essential functions" are those "fundamental job duties of a position that an individual with a disability is actually required to perform, and consideration shall

be given to the employer's judgment as to what functions of a job are essential." Galloway v. Aletheia House, 509 F. App'x 912, 913 (11th Cir. 2013) (per curiam) (internal citations and quotation marks omitted).

Here, the Magistrate Judge determined that there is sufficient evidence to create a jury issue with respect to whether Plaintiff is a qualified individual. Defendant objects to this finding, essentially rehashing the arguments presented to the Magistrate Judge in his brief in support of summary judgment. Such objections are inappropriate. Nevertheless, the Court finds the Magistrate Judge's reasoning sound. As set forth in the R&R, viewed in the light most favorable to Plaintiff, there is sufficient evidence showing

> that [Plaintiff] was capable of performing the essential functions of the Chief Jailer position. When Sheriff Jackson told Plaintiff that he was hiring him, the only information that Jackson gave Plaintiff regarding the required hours of work was that "we expect an honest day's work." [PSMF ¶ 12.] Before hiring Plaintiff as Chief Jailer, Sheriff Jackson had never required a Chief Jailer to follow a specific schedule.
>
> Other record evidence supports a finding that working all three shifts was not an essential function of the Chief Jailer job. The qualifications for the position are defined in a document captioned "Fulton County, Georgia; Class Specification; Class Title: Chief Jailer." [PSMF ¶ 17]. Although the Chief Jailer Classification Specification does not include every single essential function that may be assigned to the Chief Jailer, it is significant to note that the "Essential Duties" listed in the Class Specification document do not include any reference to hours of work. [DSMF ¶ 8; PSMF ¶ 18]. Sheriff Jackson testified that he wanted Plaintiff to be present at the jail and talking with people so that the employees from all three shifts knew Plaintiff and recognized him as the Chief Jailer. [Jackson Dep. at

10

> 105]. Mark Adger, the current Chief Jailer, likewise testified that "a Chief Jailer has to be familiar with the staff and operations of each of the three main shifts at the jail" and that this is accomplished by regularly rotating his work schedule so that he works each of the three main shifts. [Agder Aff. ¶ 6]. However, even Sheriff Jackson testified that Plaintiff could have achieved the objective of becoming familiar with the evening and morning shifts without working those full shifts. [Jackson Dep. at 180; PSMF ¶ 34].

(R&R at 26–27, Doc. No. 85.) Based on these facts, the Court agrees with the Magistrate Judge and concludes that a reasonable jury could find that Plaintiff was capable of performing the essential functions of the Chief Jailer job. Defendant's objection is this regard is therefore **OVERRULED**.

## C. Whether Defendant Discriminated Against Plaintiff by Failing to Provide a Reasonable Accommodation

Under the final prong of a disability discrimination claim, the Court must consider whether Defendant discriminated against Plaintiff by failing to provide a reasonable accommodation. See Branscomb, 461 F. App'x at 903. Defendant contends he is entitled to summary judgment on Plaintiff's failure to accommodate claim because Plaintiff's requested accommodation—that he be allowed to only work day shifts—was not "reasonable." "An accommodation qualifies as 'reasonable' only 'if it enables the employee to perform the essential functions of the job." Galloway, 509 F. App'x at 913 (quoting Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1256 (11th Cir. 2007)). In Defendant's view, Plaintiff's request to only work day shifts was unreasonable as a matter of law because working night

11

and morning shifts was an "essential function" of the Chief Jailer position. The Magistrate Judge disagreed, and Defendant now objects.

On this point, Defendant again relies primarily on the same arguments he presented to the Magistrate Judge in his summary judgment brief. The Magistrate Judge did not find Defendant's argument persuasive because

> even Sheriff Jackson testified that Plaintiff could have achieved the objective of getting to know employees and becoming familiar with the evening and morning shifts without working those full shifts. [Jackson Dep. at 180; PSMF ¶ 34]. Plaintiff testified: "I can and do occasionally perform work at night and outside of daytime working hours when required by exigent circumstances without adverse health consequences, so long as I can generally maintain a regular sleep schedule." [Pla. Dec. ¶ 12; PSMF ¶ 46]. Moreover, Defendant's response to Plaintiff's reasonable accommodation request supports a finding that working various shifts was not an essential function of the Chief Jailer position. Plaintiff testified that on October 19, 2010, within a week after the Fulton EEO sent Sheriff Jackson a letter certifying that Plaintiff was a person with an ADA-defined disability, Chief Deputy Carter changed Plaintiff's work schedule so that he was no longer required to work a rotating shift schedule. Instead, Carter told Plaintiff that he was restored back to the day shift. [Pla. Dep. at 97; Doc. 59 at 58; PSMF ¶ 40].

(R&R at 34–35.) Defendant objects to Magistrate Judge's reasoning, first pointing out that Plaintiff made the statement that he could occasionally work outside normal daytime hours in a declaration, years after Defendant fired him. Defendant also objects that the Magistrate Judge "misconstrued" Carter's reasons for restoring Plaintiff's schedule to only day shifts. These arguments, however, are

more appropriately addressed by the jury, not the Court. Defendant's objection is **OVERRULED**.

Finally, Defendant objects to the R&R on the grounds the Magistrate Judge failed to find that Defendant, in fact, provided Plaintiff with a reasonable accommodation. Specifically, Defendant notes that Carter restored Plaintiff to working only day shifts shortly after Defendant received the letter from the Fulton EEOC certifying that Plaintiff is disabled and entitled to ADA protections. Because Plaintiff acknowledged that he was satisfied with this accommodation, Defendant argues Plaintiff's discrimination claim must fail. According to Defendant, the Magistrate Judge erred by holding a reasonable jury could find in favor of Plaintiff given he "was not permitted to continue his employment by working the accommodated schedule" because there is no legal authority requiring an employer to accommodate an employee after termination. (R&R at 35–36.)

Defendant's objection is meritless. On September 20, 2010, Plaintiff gave Carter a letter from Dr. Turner requesting that Carter strongly consider permitting Plaintiff to work only daytime shifts. The very next day, Carter gave Plaintiff a four-week work schedule indicating that Plaintiff was to work at least four evening shifts and four morning shifts. Although Carter eventually agreed to restore Plaintiff to the day shift after Plaintiff requested a reasonable accommodation from the Fulton EEOC, Plaintiff never actually received the accommodation because

Defendant fired him on the day after he received the revised schedule from Carter. If the Court accepted Defendant's argument, an employer could always avoid a failure to accommodate claim by awarding a disabled employee a requested accommodation—at least in the technical sense—on one day, and firing him on the next. This is not the state of the law. Defendant's objection is **OVERRULED**.

## CONCLUSION

Having conducted a *de novo* review of the portions on the R&R to which the Parties objected, the Court hereby **OVERRULES** the Parties' objections and **ADOPTS** the R&R (Doc. No. 64) as the Order of this Court with the **MODIFICATION** herein pertaining to Plaintiff's suggestion that the evidence establishes, as a matter of law, that he is disabled within the meaning of the Rehabilitation Act. The Court **DENIES** Defendants' Motion for Summary Judgment (Doc. No. 63), **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. No. 66), and **DIRECTS** the Parties to submit their proposed pretrial order within thirty (30) days from the date of entry of this order.

**SO ORDERED**, this 30th day of July, 2016.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia